FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 13, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLE S. M., | NO: 4:18-CV-05111-FVS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Alexis L. Toma. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 13, is granted.

## JURISDICTION

Plaintiff Nichole S. M.[1] (Plaintiff), filed for supplemental security income (SSI) on July 23, 2014, alleging an onset date of January 1, 2008.[2] Tr. 181-87. Benefits were denied initially, Tr. 109-17, and upon reconsideration, Tr. 121-27. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 6, 2017. Tr. 48-88. On May 22, 2017, the ALJ issued an unfavorable decision, Tr. 15-29, and on May 8, 2018, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1983 and was 33 years old at the time of the hearing. Tr. 181. She left school after the tenth grade. Tr. 79. Her favorite job was working at a

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[2] Under Title XVI, benefits are not payable before the date of application. 20 C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20. At the hearing, Plaintiff amended the alleged onset date to the application date of July 23, 2014. Tr. 48.

ORDER ~ 2

pet store, but she was fired after a couple of months because she could not remember all of her duties and frequently asked for help. Tr. 73-74. She testified that she has trouble learning, remembering, and keeping track of things. Tr. 77.

Plaintiff testified she has migraines that last up to a month at a time. Tr. 71. She treats her migraines with medication and by alternating Tylenol, ibuprofen, a heating pad, and an ice pack. Tr. 71-72. As a last resort she will go to the hospital. Tr. 72. A lot of the time the migraine medication does not help. Tr. 72. She testified that she would miss work frequently due to migraines. Tr. 75.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156

ORDER ~ 3

(9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER ~ 4

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER ~ 5

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since July 23, 2014, the application date. Tr. 17. At step two, the ALJ found that Plaintiff has the following medically determinable impairments: migraines, kidney stones, major depressive disorder, and cannabis use disorder. Tr. 17. The ALJ then found Plaintiff does not have an impairment or combination of impairments that has significantly limited the ability to perform basic work-related activities for 12 consecutive months, and therefore Plaintiff does not have a severe impairment or combination of impairments. Tr. 17. Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 23, 2014, the amended alleged onset date and the date the application was filed. Tr. 24.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1. Whether the ALJ had a duty to develop the record; and

2. Whether the ALJ properly considered the medical opinion evidence. ECF No. 12 at 2.

## DISCUSSION

ORDER ~ 7

**A.   Duty to Develop the Record**

Plaintiff contends the ALJ had a duty to develop the record regarding her alleged cognitive deficits and migraines.  ECF No. 12 at 2-16.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983).  The regulations provide that the ALJ may attempt to obtain additional evidence to resolve an inconsistency in the evidence, when the evidence is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination.  20 C.F.R. §§ 416.917, 416.919a, 416.920b(2).  In other words, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Tonapetyan*, 242 F.3d at 1150; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

*1.   Cognitive Deficits*

Plaintiff contends the ALJ improperly declined to order neuropsychological testing recommended by examining psychiatrist Greg Sawyer, M.D., Ph.D.  ECF No. 12 at 6.  In December 2014, Dr. Sawyer completed a psychiatric examination. Tr. 307-13.  He made no diagnosis but opined, "I believe the claimant would benefit from seeking a mental health evaluation including neuropsychological testing that

would give a direction ahead in terms of finding a way for her to seek focused treatment." Tr. 312.  The ALJ gave little weight to Dr. Sawyer's opinion, discussed *infra*, and found that the opinion of the medical expert, Nancy Winfrey, Ph.D., that neuropsychological testing is not necessary "is well founded and convincing."  Tr. 22.

Plaintiff asserts the ALJ disregarded that the record includes no IQ scores and relied on unsupported inferences made by Dr. Winfrey.  ECF No. 12 at 6.  Plaintiff further contends the record contains evidence of significant cognitive deficits which, combined with the lack of IQ scores in the record, triggered the ALJ's duty to develop the record.  ECF No. 12 at 7, ECF No. 14 at 4.

Plaintiff asserts the record contains evidence of significant cognitive deficits, citing in support the fact that Plaintiff left school in the tenth grade, was enrolled in special education throughout her schooling, has not attained a GED, and has been unable to sustain employment due to attention and concentration difficulties.  ECF No. 12 at 7.  Plaintiff overstates the significance of most of these factors.  First, there is no evidence cognitive difficulties caused Plaintiff to leave school after the tenth grade.  Plaintiff reported leaving school after her brother died by suicide, citing depression and problems with classmates.  Tr. 79, 396, 410.  Second, Plaintiff was not in special education "throughout" her schooling; Plaintiff reported attending special education classes from sixth to tenth grade.  Tr. 396.  This indicates she was not in special education from the time she started school through the fifth grade.  Third, there is no basis in the record to conclude that Plaintiff's lack of a GED is due

ORDER ~ 9

to cognitive difficulties rather than lack of time, interest, or any other reason.  Tr. 396.  In fact, Plaintiff told one examiner, "[s]he has taken the [GED] pretest and passed the reading and written language portions."  Tr. 396.  Thus, the evidence of cognitive deficits cited by Plaintiff is not compelling.

Furthermore, while the record does not contain IQ test results, the ALJ reasonably concluded the record is not ambiguous regarding Plaintiff's intelligence.  Every examiner in the record found Plaintiff's intelligence is low average or average.  In 2004, many years before the relevant period, Philip G. Barnard, Ph.D. found Plaintiff was functioning in the low average range based on the Shipley Institute of Living Scale and an extrapolated estimate of the Wechsler Adult Intelligence Scale – Revised score.  Tr. 398.  He also considered her departure from school after the tenth grade, her participation in special education, and her lack of GED.  Tr. 398.  In 2009, Elisabeth Wise, RN., conducted a mental status exam and observed that Plaintiff's intelligence appeared to be in the low average range.  Tr. 409.  In 2010, based on the results of the K-BIT, a brief test of intelligence, Roland Dougherty, Ph.D., found Plaintiff was in the low-average range of intelligence.  Tr. 424.  Her WRAT-4 reading subtest scores indicated that she reads and comprehends at an average level.  Tr. 424.  In 2014, Dr. Sawyer opined that Plaintiff's intelligence is average.  Tr. 312.

Moreover, Dr. Winfrey testified this is not an individual with a diagnosis of intellectual disability and "there is no indication that this Claimant has any IQ score near 70."  Tr. 68.  Dr. Winfrey cited Dr. Dougherty's finding of low average

ORDER ~ 10

intelligence and the mental status exam findings recorded by Elisabeth Wise, R.N., from December 2009, indicating low average intelligence. Tr. 41, 66-67, 424. When asked if she agreed with Dr. Sawyer's opinion that neuropsychological testing would be important, Dr. Winfrey said, "[n]o." Tr. 65. She testified that her opinion was based on his findings and her review of the entire file. Tr. 66.

Plaintiff contends Dr. Winfrey's opinion is based on "unsupported inferences." ECF No. 12 at 10. Plaintiff asserts that Dr. Winfrey inconsistently dismissed Dr. Barnard's Trail Making test results but gave weight to his opinion regarding Plaintiff's intellectual functioning, disregarded Plaintiff's educational history, and improperly considered the involvement of Child Protective Services. ECF No. 12 at 10-12. First, Dr. Winfrey did not dismiss Dr. Barnard's findings, she observed the results of the Trail Making test were slow, but noted they were obtained 13 years prior to the hearing. Tr. 66-67. Her consideration of Dr. Barnard's opinion was not inconsistent, as she did not cite his test results in support of her opinion. Tr. 65-68. Indeed, the ALJ gave little weight to Dr. Barnard's opinion because it is from the "remote past, well outside of the adjudicative period," and that finding is not challenged by Plaintiff.[3] Tr. 23.

Second, there is no basis to conclude Dr. Winfrey "disregarded" the fact that Plaintiff's participation in special education ended because she dropped out of

---

[3] Arguments not made in an opening brief may be deemed waived. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

ORDER ~ 11

school. ECF No. 12 at 11. In discussing the requirements of Listing 12.05 for intellectual disability, Dr. Winfrey stated,

> 12.05 is an extreme diagnostic issue. You're talking about someone who's intellectually deficient, who would have to have scores in the second percentile or below. There's no indication of that. And then significant adaptive functioning. CPS has been in the family, in and out, for years. And there was never any question that the mother had that type of IQ, and she also has in 14F [Dr. Barnard's opinion, Tr. 396-99] described special education only from 6th through 10th grade.

Tr. 67-68.[4] There is no basis to conclude that Dr. Winfrey intended to imply that Plaintiff improved or no longer needed special education. The use of the word "only" reasonably references the fact that Plaintiff did not begin participation in special education until the sixth grade.[5] Even if Dr. Winfrey mistakenly believed Plaintiff returned to regular education after tenth grade, that would be beside the point. She reviewed and relied on evidence throughout the record in concluding

---

[4] "Significant adaptive functioning" references Listing 12.05, which describes three characteristics of an intellectual disorder: significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05.

[5] Plaintiff told Dr. Dougherty that she was diagnosed with ADHD in fifth grade and that her grades were good in elementary school until the fifth grade. Tr. 419, 423.

that additional testing is not necessary.[6] Plaintiff's participation in special education does not, on its face, demonstrate cognitive deficiency.[7]

Plaintiff contends that Dr. Winfrey erroneously observed that "CPS [child protective services] has been in the family, in and out, for years. And there was never any question that the mother [Plaintiff] had that type of IQ." ECF No. 12 at 11, Tr. 68. The record does not include any evidence from CPS, although Dr. Dougherty's evaluation was conducted after a referral from a social worker. Tr. 417. Plaintiff notes a statement in Dr. Dougherty's evaluation that, "[a] concern was raised in the referral letter about her ability to understand and respond to questions." Tr. 418. When asked about it, Plaintiff told Dr. Dougherty that she loves to read, she reads well, and she does not have difficulty comprehending what she is reading, although she sometimes asks other for help understanding when material is presented verbally. Tr. 418. Dr. Dougherty did not diagnose any cognitive disorder or intellectual disability and found that Plaintiff functions at low average intelligence. Tr. 427. Dr. Winfrey's statement that there was "never

---

[6] When asked if the record was sufficient to assess Plaintiff's mental condition and medically determinable impairments since July of 2014, Dr. Winfrey said, "[y]es." Tr. 60-61.

[7] The Court notes that "special education" is a broad term which addresses many different types and degrees of impairments.

ORDER ~ 13

any question" that Plaintiff had the type of IQ concerning to CPS reasonably references Dr. Dougherty's findings and does not necessarily reflect an improper inference by Dr. Winfrey.

Furthermore, even if Dr. Winfrey overstated the record, and the Court does not so find, it is not necessary for an ALJ to agree with everything an expert witness says in order to conclude the testimony constitutes substantial evidence. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). The ALJ's conclusion that Dr. Winfrey's opinion is consistent with the longitudinal record is supported by substantial evidence.

Additionally, the case cited by Plaintiff for the proposition that "there is no question that a fully and fairly developed record will include a complete set of IQ scores" is distinguishable. ECF No. 12 at 6 (quoting *Garcia v. Comm'r of Soc. Sec. Admin.*, 768 F.3d 925, 930 (9th Cir. 2014). In *Garcia*, the claimant received disability benefits as a minor because of an intellectual disability and the issue was whether the disability persisted after she reached majority. *Id.* at 926. The ALJ found the claimant had the severe impairment of borderline intellectual functioning and relied on a partial IQ score from an incomplete test in concluding that Plaintiff did not meet a listing at step three. *Id*. at 928-30. In that case, the Ninth Circuit found that complete IQ scores were essential because an IQ score could have been the deciding factor at step three, and because the regulations contemplate consideration of a complete IQ score rather than a partial one. *Id*. at 931. In this case, unlike *Garcia*, there is no evidence establishing a valid diagnosis of any type

of cognitive impairment.  To the contrary, all examiners found Plaintiff is of at least low average intelligence.  Furthermore, step three and Listing 12.05 was not at issue here because the ALJ did not find a medically determinable intellectual impairment.

Last, Plaintiff contends the ALJ failed to give deference to Dr. Sawyer's examining opinion over Dr. Winfrey's nonexamining opinion.  ECF No. 12 at 12. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  As detailed *supra* and *infra*, Dr. Winfrey's opinion is supported by other evidence in the record.  Thus, the ALJ properly relied on Dr. Winfrey's opinion.  The ALJ's conclusion that the record is not ambiguous is supported by substantial evidence and there was no duty to develop the record with regard to IQ or other cognitive testing.

### 2.    *Migraines*

Plaintiff contends the ALJ erred by failing to develop the record regarding her migraines.  ECF No. 12 at 13-16.  Plaintiff asserts the ALJ was required to develop the record by seeking a consultative examination for her migraines because the examining physician did not address them, and because her treating provider moved out of the area.  ECF No. 12 at 13.

The ALJ found that migraines are a medically determinable but nonsevere impairment.  Tr.   17.  A medically determinable impairment is an impairment which results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic

ORDER ~ 15

techniques.  20 C.F.R. § 416.921.  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations.  *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).  A severe impairment is an impairment that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).

The ALJ determined that Plaintiff's headaches no more than minimally limit Plaintiff's basic work activities.  Tr. 20.  The ALJ noted that although Plaintiff alleged her scoliosis causes headaches that can last for weeks, she has sought little treatment for this alleged problem.[8]  Tr. 20, 242.  The ALJ cited the January 27,

---

[8] The ALJ found the argument that Plaintiff's mental impairments hindered her ability to seek treatment unconvincing.  Tr. 19.  When there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints.  *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).  Plaintiff testified she would go to the hospital if necessary, Tr. 72, and the ALJ noted she was able to make and keep appointments for other conditions such as an ingrown toenail and diarrhea, and she went to the emergency department for abdominal pain.  Tr. 19, 317, 325-30, 333.  Plaintiff's

2014, office visit record from Cheryl Hipolito, M.D., indicating Plaintiff complained of headaches for 20 years. Tr. Tr. 20, 294. Dr. Hipolito diagnosed "common migraine without mention of intractable migraine" and prescribed Naproxen. Tr. 297. At a follow up visit in March 2014, Plaintiff reported, "Headaches are also much better. Has not needed Naproxen since HA [headache] is infrequent now." Tr. 20, 299. There are no other medical findings regarding headaches in the record.[9]

_____

argument to the contrary is speculative and without basis in the record. ECF No. 12 at 15. The ALJ's finding is supported by substantial evidence.

[9] Plaintiff cites other records as "indications" of migraines, but the references to migraines in the cited records are in the medical history section of treatment notes for unrelated issues, which Dr. Jahnke testified is not objective evidence and may not be accurate. ECF No. 12 at 14 (citing Tr. 290, 315, 333, 341, 353, 367); Tr. 57-58. Plaintiff also cites her report of migraines to Dr. Barnard during a psychological evaluation in 2004, well before the relevant period in this case. ECF No. 12 at 14 (citing Tr. 397). Additionally, Plaintiff cites hospital records for unrelated conditions which reflect Sumatriptan was prescribed by her treating physician for migraines in 2015. ECF No. 12 at 14 (citing Tr. 334, 342). The records cited by Plaintiff are not compelling indicators that Plaintiff's ability to

The ALJ also noted the testimony of the medical expert, Lynn Jahnke, M.D., who observed few complaints of migraines in the record. Tr. 20, 57-59. Dr. Jahnke testified that while the record indicates Plaintiff took medication for migraines in 2014, there are no findings or objective evidence that migraines continued. Tr. 20, 58. The ALJ gave great weight to Dr. Jahnke's opinion. Tr. 22. Based on the forgoing, the ALJ's finding that Plaintiff's migraines are nonsevere is reasonable and based on substantial evidence.

Plaintiff suggests the record is incomplete because the examining physician, James Opara, M.D., did not assess Plaintiff's migraines. ECF No. 12 at 13-15. Dr. Opara's December 2014 report indicates he reviewed Dr. Hipolito's January and March 2014 office visit notes and that Plaintiff reported back pain from scoliosis leading to migraine headaches. Tr. 303. Dr. Opara did not otherwise comment on or address migraines in his report. Tr. 303-06. He opined that Plaintiff has no functional limitations. Tr. 305-06. The ALJ gave great weight to Dr. Opara's assessment of no functional limitations. Tr. 22.

At the hearing, Plaintiff requested a consultative exam to develop the record regarding migraines. Tr. 85, 87. An ALJ "has broad latitude in ordering a consultative examination." A consultative examination may be required to resolve

_____

perform work related activities is compromised by migraines and do not undermine the ALJ's findings.

an inconsistency in the evidence or when the evidence as a whole is insufficient for a determination.   20 C.F.R. § 416.919a; *see Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001).  *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990).  However, the request for a consultative exam does not trigger the ALJ's duty to develop the record.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered *only when* there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (emphasis added).  Given the content of the few treatment notes and Dr. Jahnke's testimony, the record regarding migraines is not ambiguous or inadequate to allow for proper evaluation.  *See Jenkins v. Colvin*, No. EDCV 14-1796-JPR, 2015 WL 4208517, at *5 (C.D. Cal. July 10, 2015) (determining the ALJ's finding that the record contains insufficient evidence to support the claimant's contentions is not equal to a finding that the record should be developed, but demonstrates that the claimant's contentions lack merit).  Accordingly, the ALJ's duty to develop the record was not triggered, and the ALJ did not err.

**B.    Opinion Evidence**

        Plaintiff contends the ALJ improperly rejected the opinions of examining psychologist Greg Sawyer, M.D., Ph.D.  ECF No. 12 at 16-20.

        There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

ORDER ~ 19

but who review the claimant's file (nonexamining or reviewing physicians)."
*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Dr. Sawyer completed a psychiatric evaluation in December 2014. Tr. 307-13. He made no diagnosis and stated, "[t]his is a very difficult case . . . her symptoms do not fit into a typical psychiatric diagnosis at this time." Tr. 312.

Despite assigning no diagnosis, Dr. Sawyer indicated Plaintiff may have some difficulty understanding, carrying out, and remembering complex and 1-2 step instructions; would probably have some difficulty performing work activities on a consistent basis without special or additional instructions; and would have difficulty sustaining concentration and persisting in work related activity at a reasonable pace. Tr. 312-13. He opined Plaintiff would have no difficulty in any other functional area. Tr. 312-13. Dr. Sawyer recommended a mental health evaluation including neuropsychological testing to "give a direction ahead in terms of finding a way for her to seek focused treatment." Tr. 312.

The ALJ gave little weight to Dr. Sawyer's opinion. Tr. 23. Because Dr. Sawyer's opinion was contradicted by the opinion of the medical expert, Dr. Winfrey, Tr. 60-69, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Sawyer's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found the limitations assessed by Dr. Sawyer are inconsistent with his generally benign findings on examination. Tr. 23. A discrepancy between a provider's clinical notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. The ALJ noted that Dr. Sawyer's finding that Plaintiff did not have any psychiatric impairments is inconsistent with the psychological limitations assessed. Tr. 23. Plaintiff suggests the ALJ overstepped by making an improper medical conclusion in interpreting Dr. Sawyer's opinion. ECF No. 12 at 18. However, the ALJ appropriately relied on Dr. Winfrey's testimony that Dr.

ORDER ~ 21

Sawyer found Plaintiff's attention is good, and that there is no evidence his mental status exam findings to show significant memory difficulty. Tr. 23, 62, 65-66. Dr. Winfrey observed Dr. Sawyer found Plaintiff is capable of following complex instructions and, "[t]here's nothing to indicate significant memory issues and very rare, I would add, he has given absolutely no diagnosis." Tr. 65. Dr. Winfrey also noted other evidence in the file supporting her conclusion. Tr. 66. Thus, the ALJ did not make an unsupported medical conclusion the ALJ's determination that the limitations assessed by Dr. Sawyer are inconsistent with the limitations assessed is supported by substantial evidence.

Second, the ALJ gave greater weight to Dr. Winfrey's opinion and found it is more consistent with the longitudinal record than Dr. Sawyer's opinion. Tr. 23. The opinion of an examining or treating physician may be rejected based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995)). The ALJ noted that Dr. Sawyer implied that Plaintiff may have an undiagnosed neuropsychological condition. Tr. 23, 312. However, the ALJ observed that Dr. Sawyer did not review the neurological testing from Dr. Barnard or Dr. Dougherty, but Dr. Winfrey did. Tr. 23. Plaintiff contends there is no reason to believe that Dr. Sawyer's opinion would have changed had he reviewed other evidence in the record, ECF No. 12 at 19, but that is beside the point. The

ORDER ~ 22

ALJ gave weight to Dr. Winfrey's determination that Plaintiff does not have an intellectual disability based on her review of Plaintiff's performance on multiple psychological evaluations, her performance in school, and her observed and reported functioning. Tr. 22; *see supra*. Thus, the ALJ's conclusion that Dr. Winfrey's opinion is more consistent with the longitudinal record is supported by substantial evidence.

Plaintiff also reiterates the argument that Dr. Sawyer's opinion should have been granted more weight than Dr. Winfrey's opinion because Dr. Sawyer examined Plaintiff. ECF No. 12 at 19. As discussed *supra*, Dr. Winfrey's opinion is supported by other evidence in the record and the ALJ reasonably relied on it in giving less weight to Dr. Sawyer's opinion. *See Lester*, 81 F.3d at 831.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is DENIED.

///

///

///

///

///

///

ORDER ~ 23

2. Defendant's Motion for Summary Judgment, ECF No. 13, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order and provide copies to counsel.  Judgment shall be entered for Defendant and

the file shall be **CLOSED**.

**DATED** September 13, 2019.


<u>        *s/ Rosanna Malouf Peterson*        </u>
ROSANNA MALOUF PETERSON
United States District Judge